IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SONIA ANN HUIETT,

        Plaintiff,

vs.                              Case No. 12-1350-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled. If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On March 4, 2011, administrative law judge (ALJ) James Harty issued his decision (R. at 13-23). Plaintiff alleges that she had been disabled since October 15, 2007 (R. at 13). Plaintiff is insured for disability insurance benefits through

4

March 31, 2013 (R. at 15). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 15). At step two, the ALJ found that plaintiff has the following severe impairments: posttraumatic stress disorder (PTSD), major depressive disorder, anxiety disorder, and alcohol dependence/abuse (R. at 15). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 16). After determining plaintiff's RFC (R. at 17), the ALJ determined at step four that plaintiff is able to perform past relevant work as a maid/cleaner and warehouse laborer (R. at 21). In the alternative, at step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 22-23). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 23).

**III. Did the ALJ err in his consideration of the medical opinion evidence?**

On November 10, 2010, Ashley Kjos, a T-LMLP, performed a consultative mental assessment of the plaintiff, and prepared a mental RFC assessment form (R. at 354-358). She opined that plaintiff was moderately limited in 11 categories, and was not significantly limited or there was no evidence of limitation in the other 9 categories (R. at 354-356). In a comprehensive narrative, Ms. Kjos concluded as follows:

> Overall, her depression and anxiety have
> limited her ability to efficiently carry out
> many tasks in her daily life including
> having employment, a social support network,
> and a sense of safety in the community.

(R. at 358). Dr. Kjos also filled out a drug abuse and alcohol evaluation on November 23, 2010, stating that plaintiff's impairments are disabling without consideration of drugs/alcohol, that her impairments would continue and are not caused or exacerbated by drugs/alcohol, and that her limitations would be disabling even if drugs/alcohol were not being used by the plaintiff (R. at 364-365).

The ALJ discounted the opinions of Ms. Kjos for a number of reasons. The first reason cited was because Ms. Kjos was not an "acceptable medical source" (R. at 20).

Acceptable medical sources include licensed physicians and licensed or certified psychologists. 20 C.F.R. 404.1513(a). According to SSR 06-03p:

> The fact that a medical opinion is from an
> "acceptable medical source" is a factor that
> may justify giving that opinion greater
> weight than an opinion from a medical source
> who is not an "acceptable medical source"
> because..."acceptable medical sources" "are
> the most qualified health care
> professionals."

SSR 06-03p, 2006 WL 2329939 at *5.

The ALJ asserts that Ms. Kjos, a T-LMLP, is not an acceptable medical source. Ms. Kjos was a T-LMLP from August 2,

6

2010 through August 31, 2012. https://www.kansas.gov/bsrb-verification/view.do?id=27589394 (March 17, 2014). An LMLP is a licensed masters level psychologist. K.S.A. 74-5362. A T-LMLP is licensed masters level psychologist who has been issued a temporary license. K.S.A. 74-5367; https://www.kansas.gov/bsrb-verification/view.do?id=27589394 (March 17, 2014).[2]

A licensed masters level psychologist (LMLP) is a licensed psychologist in the state of Kansas, and has been found to be an "acceptable medical source" within the meaning of the regulations. Dannels v. Astrue, Case No. 10-1416-SAC (Dec. 20, 2011); Doc. 19 at 9); Bronson v. Astrue, Case No. 06-4142-JAR (Jan. 8, 2008; Doc. 20 at 20); West v. Barnhart, Case No. 02-1007-MLB (May 5, 2003; Doc. 30 at 9). According the regulations, a licensed or certified psychologist is an acceptable medical source. According to Kansas statute, Ms. Kjos was a licensed psychologist on the dates in which she issued her opinions, holding a temporary license. Therefore, under the plain meaning of the regulation, Ms. Kjos was an acceptable medical source when she issued her opinions. Defendant argues that Ms. Kjos, holding only a temporary license, was not "fully" licensed (Doc. 21 at 18). However, the regulation does not require one to be "fully" licensed, or to

---

[2] According to K.S.A. 74-5367, a temporary license may be issued if the person meets all the requirements for licensing under K.S.A. 74-5361 *et seq.*, but whose application for licensure is pending, or has yet to meet the requirement of postgraduate supervised work experience, or who has not yet passed the licensing examination.

hold a permanent, as opposed to a temporary license. Defendant cites to no authority for this distinction. The court finds defendant's argument to be without merit.

Defendant next argues that any mischaracterization of her status as a non-acceptable source was harmless error because the ALJ set out other reasons for discounting the opinions of Ms. Kjos (Doc. 21 at 19). Courts should apply the harmless error analysis cautiously in the administrative review setting. Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). However, it may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance where, based on material the ALJ did at least consider (just not properly), the court could confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way. Fischer-Ross, 431 F.3d at 733-734; Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

On the facts of this case, the court cannot confidently say that no reasonable factfinder, if they had considered the opinions of Ms. Kjos as an acceptable medical source, could have resolved the factual matter in any other way. Clearly, one of the reasons for discounting the opinions of Ms. Kjos is because the ALJ found that she was not an acceptable medical source, when in fact she was an acceptable medical source. The agency's

8

own regulations make clear that an opinion from an acceptable medical source is a factor that may justify giving that opinion greater weight because such acceptable medical sources are "the most qualified health care professional." SSR 06-03p, 2006 WL 2329939 at *5.

Furthermore, an ALJ must not consider the opinions of one treating or examining source in isolation, but his opinions must be considered in light of the entire evidentiary record, including the opinions and assessments of other treating or examining sources. The court is concerned with the necessarily incremental effect of each individual report or opinion by a source on the aggregate assessment of the evidentiary record, and, in particular, on the evaluation of reports and opinions of other medical treating or examining sources, and the need for the ALJ to take this into consideration. See Lackey v. Barnhart, 127 Fed. Appx. 455, 458-459 (10th Cir. April 5, 2005).

The record also contains a mental RFC assessment from Minnie Martin, a licensed social worker, who treated plaintiff for 15 sessions between August 20, 2010 and November 4, 2010. Her assessment, dated November 12, 2010, opined that plaintiff was moderately limited in 7 categories, markedly limited in 6 categories, and not significantly limited in 6 categories (R. at 359-362). Ms. Martin agreed with Ms. Kjos that plaintiff's alcohol/substance abuse do not contribute to plaintiff's

9

limitations (R. at 361, 356).[3] Thus, both an acceptable medical source, and a treatment provider found that plaintiff had at least moderate limitations in numerous categories.

The ALJ relied on an acceptable medical source, Dr. Schwartz, who opined in a consultative exam on December 22, 2009 that it would be difficult for plaintiff to work full time because of her emotional problems; but he also stated that without her alcohol dependence, he believed that plaintiff could probably work full time (R. at 302-304). The ALJ gave persuasive weight to his opinions (R. at 19).

First the ALJ did not cite to any treatment provider or other medical source that supported the opinions of Dr. Schwartz. Dr. Schwartz offered no opinion regarding plaintiff's limitations in various mental health categories, as did Ms. Kjos and Ms. Martin. Both Ms. Kjos and Ms. Martin found that plaintiff had at least moderate limitations in numerous categories. Ms. Kjos was an acceptable medical source, which placed her on the same level as Dr. Schwartz, another acceptable medical source. Furthermore, the opinions of Ms. Kjos should be considered in light of the opinions of Ms. Martin, a treatment provider who stated that she saw plaintiff for 15 sessions from

---

[3] The ALJ discounted the opinions of Ms. Martin because she was not an acceptable medical source, because her treatment history was quite brief, and her opinion was without substantial support of her own treatment records. However, the ALJ failed to mention that Ms. Martin indicated that she saw plaintiff for 15 sessions from August-November 2010. When this case is remanded, the ALJ should consider the number of sessions in which plaintiff saw the plaintiff and consider the opinions of Ms. Martin, a treatment provider, in light of the opinions of Ms. Kjos, an acceptable medical source.

August-November 2010. On these facts, the court finds that mischaracterizing Ms. Kjos as "not an acceptable medical source" cannot be deemed harmless error. Therefore, this case shall be remanded in order for the ALJ to consider the opinions of Ms. Kjos in light of the fact that she was an acceptable medical source, and to consider her opinions in light of the opinions of Ms. Martin, a treatment provider.

When this case is remanded, the ALJ should also consider the fact that all of the medical opinion evidence (Ms. Kjos, Ms. Martin, Dr. Schwartz) would appear to support a finding that plaintiff is disabled when considering plaintiff's alcohol and/or drug use (R. at 356, 361, 364-365, 303). On remand, unless the ALJ can cite to substantial evidence to support a finding that plaintiff is not disabled when considering plaintiff's alcohol/drug use, the ALJ must then make a determination whether the claimant would still be found disabled if he or she stopped abusing alcohol or drugs. If so, then the alcohol or drug use is not a contributing factor material to the finding of disability. If however, the claimant's remaining impairments would not be disabling without the alcohol or drug abuse, then the alcohol or drug abuse is a contributing factor material to the finding of disability. Drapeau v. Massanari, 255 F.3d 1211, 1214-1215 (10th Cir. 2001).

**IV. Other issues raised by plaintiff**

Plaintiff has raised other issues, including the issue of the ALJ's analysis of plaintiff's credibility. The court will not address the remaining issues in detail because they may be affected by the ALJ's resolution of the case on remand after the ALJ gives further consideration to the medical source opinions, as set forth above. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

However, the court will address the issue of plaintiff's daily activities. The ALJ stated that plaintiff's daily activities are not as limited as one would expect with disabling limitations. The ALJ then proceeded to note plaintiff's independence with personal care, that she prepares meals, that she does laundry, that she shops, that she walks her dog, and that she reads (R. at 19-20). According to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity. 20 C.F.R. § 404.1572(c) (2013 at 399). Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or

12

work does not establish that a person is capable of engaging in substantial gainful activity. Krauser v. Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping. The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible. The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work**. As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In other words, evidence of performing general housework does not preclude a finding of disability. In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries. We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities,

> which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends. We found this to be an unpersuasive reason to deny benefits: "**We have repeatedly held...that 'the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.'**" Id. (quoting Hogg v. Shalala, 45 F.3d 276, 278 (8th Cir.1995)). Moreover, we have reminded the Commissioner
>
>> **that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world...The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity.**
>
> Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir.1989) (citations omitted).

Draper, 425 F.3d at 1131 (emphasis added).

The fact that plaintiff can engage in personal care, prepare meals, do laundry, shop, walk a dog, and read do not qualify as the ability to do substantial gainful activity. Therefore, on remand, the ALJ should examine plaintiff's daily activities in light of the above regulations and case law.

Plaintiff testified that, although she reads, she cannot read that long, she has to have some help when reading, and

sometimes she has to read something four or five times before she understands it (R. at 48, 53-54).  An ALJ cannot use mischaracterization of a claimant's activities of a claimant's activities by selective and misleading evidentiary review to discredit his/her claims of disabling limitations.  <u>Sitsler v. Astrue</u>, 410 Fed. Appx. 112, 117-118 (10th Cir. Jan. 10, 2011). Therefore, on remand, the ALJ should also take into consideration the limitations noted by plaintiff in her testimony regarding her daily activities.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 19th day of March 2014, Topeka, Kansas.

s/Sam A. Crow  
Sam A. Crow, U.S. District Senior Judge